GRECCO *v.* STATE OF INDIANA.

[No. 29,800. Filed April 18, 1960. Rehearing denied June 20, 1960.]

*Dan C. Flanagan, James P. Murphy, Flanagan & McCain* and *Thomas M. Moorehead,* all of Fort Wayne, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling,* Assistant Attorney General, and *Patrick D. Sullivan,* Deputy Attorney General, for appellee.

LANDIS, J.—Appellant was charged with the crime of inflicting physical injury in the commission of robbery and after a trial by jury was convicted and sentenced to life imprisonment. He appeals from the judgment of conviction and assigns as error the overruling of his motion for new trial.

Appellant contends among others things that the verdict was not sustained by sufficient evidence and was contrary to law. Appellant states that the following three elements are essential to be established in order to constitute the offense charged against appellant, viz:

(1)    Injury to the person of Dora Barrone,

(2)    by a bludgeon held in the hands of appellant,

(3)    during the course of a robbery by him.

The evidence favorable to appellee shows that appellant and one Linius Barrone (a nephew of the victimized person Dora Barrone), on the night of February 4, 1956, borrowed a car belonging to Linius's wife in Chicago for the alleged purpose of collecting a debt in another city; that appellant and Linius Barrone did not return home until mid-morning of the following day, February 5; that the same car was seen in front of Dora Barrone's home in the town of Monroeville, Allen County, Indiana, in the early morning hours of February 5; that the said Dora Barrone was a 69

year old single woman living by herself in a house in said Monroeville, Indiana; that on the night of February 4, appellant and Linius had gone to the said home of Dora Barrone; that Linius had on said night of February 4, 1956, demanded money of Dora Barrone and had been given $15.00; that early on the morning of February 5, Linius, in the company of appellant, had returned to the home of Dora Barrone; that while appellant and Linius were in her presence, she was tripped by appellant and fell heavily to the floor; that appellant took from her bedding her revolver which was later found by the officers in Linius Barrone's Chicago home; that Linius beat Dora Barrone with a billy club he had picked up in the house, and which was later found near a pool of blood in Dora's home; that he used his feet on her to inflict further injury; that after taking money from her person, Linius Barrone and appellant fled; that Dora Barrone was found about 4:00 p.m. on February 5, in an unconscious state and in a pool of blood suffering from severe injuries to her head and body.

There is no question that the above evidence was sufficient to prove (1) the injury to Dora Barrone and that (2) the same occurred during the course of a robbery by appellant. Appellant argues the evidence is not sufficient to show a striking of Dora Barrone by appellant with a bludgeon or club.

Burns' §9-102 (1956 Replacement),[1] provides:

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or affidavit, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted;

1. Acts 1905, ch. 169, §224, p. 584.

and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The case of *Breaz* v. *State* (1938), 214 Ind. 31, 34, 13 N. E. 2d 952, 953, construes the above statute as follows:

" 'There can be no doubt of the general rule of law, that a person engaged in the commission of an unlawful act is legally responsible for all ▪ the consequences which may naturally or necessarily flow from it, and that, if he combines and confederates with others to accomplish an illegal purpose, he is liable *criminaliter* for everything done by his confederates which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan . . .' 1 R. C. L. §5, p. 133."

And it is further well settled that a person may be alleged in the affidavit to be a principal and evidence thereon introduced to prove that he was an accessory. *Brunaugh* v. *State* (1910), 173 Ind. 483, 90 N. E. 1019.

It is therefore clearly apparent that the evidence was sufficient to prove that appellant, as an accessory, struck Dora Barrone with a bludgeon or club.

Appellant next relies on specification 13 of his motion for new trial alleging:

"The Court erred in permitting the prosecuting witness, Dora Barrone, to testify as a witness in the above-entitled cause, for the reason that said Dora Barrone was a person who had been adjudicated an insane person and had never been restored, all of the foregoing over the objection of the defendant."

Appellant has, however, conceded in his brief on appeal that while the statute[2] makes an insane person incompetent as a witness, the modern view which is now prevalent and supported by the weight of authority, is that a person affected with insanity or mental illness, notwithstanding the positive prohibition of the statute (as to persons insane at the time they are offered as witnesses), may be a competent witness depending entirely on his or her mental condition as determined by the court at the time of trial. As this court stated in *Wedmore* v. *State* (1957), 237 Ind. 212, 222, 223, 143 N. E. 2d 649, 653, 654:

"The question of stability and mental condition of the prosecuting witness herein concerned her competency and was a matter for the court to determine. *Simpson* v. *The State* (1869), 31 Ind. 90; *The City of Fort Wayne* v. *Coombs et al.* (1886), 107 Ind. 75, 7 N. E. 743, 57 Am. Rep. 82; *Dickson et al.* v. *Waldron* (1893), 135 Ind. 507, 524 [34 N. E. 506], 35 N. E. 1, 24 L. R. A. 483, 41 Am. St. Rep. 440; *Myers* v. *State* (1922), 192 Ind. 592, 601, 137 N. E. 547, 24 A. L. R. 1196; *Butler* v. *State* (1951), 229 Ind. 241, 245, 97 N. E. 2d 492.

. . . . . .

"In this case if timely objection to the competency of the prosecuting witness had been made, it would have been the duty of the court to make such an examination as would satisfy it as to her competency or incompetency. 58 Am. Jur., Witnesses, §134, p. 101; and §211, p. 144."

Appellant next contends, as urged under specification 14 of his motion for new trial, that the exclusion by the court of appellant's offered exhibit one (being a

2. Burns' §2-1714 (1946 Replacement), being Acts 1881 (Spec. Sess.), ch. 38, §275, p. 240, provides:
"The following persons shall not be competent witnesses:
"First. Persons insane at the time they are offered as witnesses, whether they have been so adjudged or not."

certified and exemplified copy of Dora Barrone's adjudication and commitment to an institution as a mentally ill person some five years prior to the trial), was error. It appeared further that she was released from the State Hospital later the same year.

The probative value of adjudications of insanity in determining the competency of a witness is discussed by Professor Wharton in his treatise on Criminal Evidence, as follows:

> "Evidence that a witness has been adjudged insane and is now or has been an inmate of a sanitarium does not necessarily render him ■ incompetent if he is a person of proper understanding at the time he is called and examined.

And further,

> "If the witness was adjudicated incompetent a number of years before the trial, the court is not bound by the adjudication but may deter-■ mine for itself whether the incompetent has sufficient capacity to be a witness." 3 Wharton, Criminal Evidence (12th ed. 1955), §761, p. 91.

Wigmore says on the same subject:

> ". . . the usual attitude is to consider as immaterial a derangement occurring *before* the time of testifying." 2 Wigmore, Evidence (3d ed. 1940), §493, p. 586.

The subject was extensively treated by this court in *Breedlove et al.* v. *Bundy* (1884), 96 Ind. 319, 324, where the following discussion appears:

> "When appellee was introduced as a witness in his own behalf, appellants' counsel objected, upon the alleged ground that appellee was an insane person. *They made no offer to prove his then insan-*

*ity, but offered to introduce a record made nine years before in 1872,* by two justices of the peace, certifying that appellant was then insane and had been so for two weeks, and that he was a suitable person to be admitted into the hospital for the curable insane, to be treated for that disease. *The record shows that he was then so committed.* But it also substantially shows that his then insanity was but temporary, and that he was supposed to be curable.

"After the lapse of so long a time, when he was presented upon the witness stand, we think the reasonable presumption would be, there being no proof to the contrary, that he was then sane, that he had been cured and discharged from the hospital; and we think this presumption outweighs any legal presumption, if any exists, of any permanent or continuous insanity inferable from the proceedings contained in said record.

"This is not like a case where the lunatic had been regularly adjudged insane by an inquisition and placed under guardianship, after which the presumption of insanity continues until he has been regularly adjudged sane and discharged from his guardianship. We do not think such a presumption as that can apply to this case. *There being no evidence as to the condition of his mind at the time of the trial, from his appearance and demeanor the court may have deemed him competent to testify, and there was no error in excluding the record. . . ."* (Emphasis added.)

It would be difficult to conceive of a case coming closer to the facts existing in the case at bar, where the witness was committed to an institution and released the same year, which was five years prior to the time she was called as a witness.

The issue the court was concerned with in determining the competency of the witness was her competency at the time of the trial—not some five years before. And when the evidence further showed the witness was released. from the institution

the same year she was committed, we are unable to see that the exhibit had any necessary relevance, particularly when no evidence as to her incompetence at the time of trial was offered. The trial court observed the appearance and demeanor of the witness and the rule on appeal is, as stated in the case of *Butler* v. *State* (1951), 229 Ind. 241, 97 N. E. 2d 492, that where the trial court has passed upon the question of the competency of a witness and has determined the witness to be competent, a manifest abuse of discretion is required before the reviewing court will interfere. No such abuse of discretion was here shown.

We conclude no error has been demonstrated by appellant in the exclusion of exhibit 1, or in the ruling of the court which permitted the witness Dora Barrone to testify.

This disposes of all questions presented to us on this appeal.

Judgment affirmed.

Arterburn, C. J., and Bobbitt, J., concur.

Jackson, J., dissents without opinion.

Achor, J., not participating because of illness.

## ON PETITION FOR REHEARING

LANDIS, J.—Appellant has filed petition for rehearing contending that this Court erred in its original opinion (1) in failing to give a decision of a substantial question arising on the record and presented by appellant's brief, to-wit: as to whether the trial court erred in denying appellant's motion to separate the jury, and (2) in holding this disposes of all questions presented to us on this appeal.

Our statement in our earlier opinion that such opinion "disposes of all questions presented to us on this

appeal" was predicated on the fact that no other questions were properly presented or brought before us on this appeal.

In appellant's original brief appellant asked that we consider whether certain instructions given by the court at the request of the State (Instructions 6, 7 and 8) were erroneous, but it is apparent that appellant failed to make any specific objections thereto in the trial court as required by Rule 1-7. Thus, all questions relative thereto are waived.

In the amendment to appellant's original brief he urged the question he is now asserting, to-wit: whether the overruling of his motion to separate the jury was error. Appellant, however, did not set forth in his brief in the Concise Statement of the Record as required by Rule 2-17 (d)[1] anything whatever with reference to the motion to separate, there being no showing as to whether such a motion was filed, or ruled on, or what its contents were.

This rule was designed to enable each judge to consider intelligently each question presented without resorting to the record (only one copy of which is available to be shared by the five judges of this Court), and accordingly it is well settled that where appellant's brief fails to set forth the record so as to present fully a question without resorting to the record, the appellate tribunal is under no duty to search the record to reverse the cause. *Marks* v. *State* (1942), 220 Ind. 9, 40 N. E. 2d 108; *Waggoner* v. *State* (1949), 227 Ind. 269, 85 N. E. 2d 642; 9 Ind. Law Encyl., "Criminal Law," §693, pp. 189, 190, and cases therein cited under notes 29, 30 and 31.

---

1. Rule 2-17 (d) requires in part that appellant's brief contain "A concise statement of so much of the record as fully presents every error and objection relied upon, referring to the pages and lines of the transcript."

The appellant was represented by adequate counsel and no valid reason has been cited why this Court should act as co-counsel for the accused in this case and, as such, participate in his defense and search the record in order to reverse.

It is our view that our previous opinion in this cause adequately dealt with all matters properly presented to us on such appeal, and as the petition for rehearing is not meritorious, the same is now overruled.

Bobbitt and Arterburn, JJ., concur.

Jackson, C. J., votes for rehearing.

Achor, J., not participating.

NOTE.—Reported in 166 N. E. 2d 180. Rehearing denied 167 N. E. 2d 714.