Dennis Jon BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1338–94.

Court of Criminal Appeals of Texas, En Banc.

April 24, 1996.

# 228 

Tom Whitlock, Denton, for appellant.

Kathleen A. Walsh, Asst. Dist. Atty., Denton, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge.

A jury convicted appellant of possession with intent to deliver N–hydroxy-3, 4–methylenedioxyamphetamine, also known as ecstasy. After finding the enhancement allegation to be true, the jury assessed appellant's punishment at confinement for twenty-five years and a fine of $5,000.00. The Court of Appeals reversed the conviction after finding the trial court erred in permitting the prosecutor to continue prosecuting the case after she testified as a witness in the case. *Brown v. State*, 883 S.W.2d 389, 391 (Tex.App.—Fort Worth 1995). We granted the State's petition for discretionary review to address that determination. We reverse.

On the night of November 14, 1991, Donald Burr, an officer employed by the Texas Department of Public Safety and Highway Patrol Service, stopped appellant for speeding on Interstate 35. After appellant got out of the car, Burr noticed that he seemed unusually nervous, that he could not stand still, and that he moved his hands quickly, often putting his hand inside his coat. At Burr's request, appellant walked back to his car to get his driver's license, reached inside the car on the driver's side, and then handed Burr a driver's license. While Burr wrote out the speeding citation, he became increasingly concerned because appellant continued to act overly nervous and to put his hand in an inside jacket pocket.

When Burr spoke with the passenger, Gordon Albert, Jr., he smelled marihuana inside the car. Albert admitted he and appellant had smoked marihuana earlier. Burr returned to appellant, who also admitted he and Albert had smoked marihuana earlier in the evening. After appellant would not take his hand out of his coat pocket, Burr and his partner handcuffed him and searched him for weapons. In appellant's pocket Burr found a large bag of pills. Appellant claimed they were steroids. The pills were later identified as ecstasy. Burr again spoke with Albert and discovered a baggie containing cocaine in Albert's jacket pocket.

Appellant was indicted for possession with intent to deliver ecstasy and for possession with intent to deliver cocaine. Albert was indicted for possession of cocaine. Three or four days prior to appellant's trial the charges against Albert were dismissed.

Albert testified at appellant's trial that after appellant had first gotten out of the car, he came back to the car and handed Albert a baggie containing something. Albert stated that it was dark, that he did not know what it was and, without thinking, put it inside his coat pocket. He also testified that after they were arrested appellant assured him that he would get Albert out of trouble since Albert was not involved and that he would hire a lawyer for Albert. Albert testified that he did not have a deal with the State to testify, even though his case had been dismissed a few days before appellant's trial.

Burr testified that he saw appellant return to the car to get his driver's license, but did not actually see him get the license. Burr stated that he did not see appellant reach into his pocket and hand anything to Albert when appellant went back to the car. He also stated that he was not able to see anything in particular, except that appellant went back to the car.

Appellant testified that he thought the pills were steroids, that the cocaine was not his, and that he did not know Albert possessed cocaine. He also stated that he presumed Albert had a deal with the State to testify against him in return for having Albert's case dismissed.

After the defense rested its case, the prosecutor attempted to offer a certified copy of the dismissal of the case against Albert to show the case was dismissed because Albert

passed a polygraph examination, not because of any deal. The trial court did not permit admission of this dismissal. The prosecutor indicated that she was the only one who knew why the case was dismissed. She wanted to rebut appellant's claim that there was a deal, but she expressed reluctance to be a witness since she was prosecuting the case. Eventually, the trial court permitted the prosecutor to testify there was no deal with Albert requiring him to testify against appellant in return for the dismissal of the case.

Before argument to the jury, defense counsel asked the trial court not to allow the prosecutor to continue prosecuting the case because she had "made herself a material witness." He stated it was unfair to the defendant for the prosecutor to put her credibility in issue and then also argue to the jury. The trial court denied the request.

Defense counsel reiterated his theory to the jury that Albert had a deal with the State to testify. During her argument to the jury, the prosecutor responded, "Now, the Defense Attorney says that I say no deal was made and I'm your public servant and I'm lying to you. If you have a problem with the case against Gordon Albert being dismissed, tell me after this case is over."

The Court of Appeals held the trial court erred in allowing the prosecutor to continue prosecuting the case after she had testified. *Brown,* 883 S.W.2d at 391. The Court of Appeals did not give any legal basis for its holding. It merely mentioned a footnote consisting of dicta in *Beasley v. State,* 728 S.W.2d 353, 357 n. 5 (Tex.Cr.App.1987), which, without addressing an issue or stating facts, noted that it would be highly improper for a district attorney to serve as a witness and then continue prosecuting the same case. The Court of Appeals then stated, without

explanation, that it could not say beyond a reasonable doubt that this error did not contribute to appellant's conviction. *Brown,* 883 S.W.2d at 391.

■ The State presents several arguments challenging the Court of Appeals' holding that the trial court erred in failing to remove the prosecutor. The State argues the prosecutor did not violate the applicable disciplinary rule because the prosecutor's testimony was not directed to establishing an essential fact in the case.[1] The State also argues the Court of Appeals erred to reverse the conviction *solely* on the basis of any violation of a disciplinary rule because appellant failed to show his rights were violated or that he was deprived of a fair trial. We agree with the latter argument; therefore, we find it unnecessary to decide whether any disciplinary rules were violated in this case.[2]

Appellant's brief to the Court of Appeals did not claim his rights were violated by the prosecutor's noncompliance with a disciplinary rule. Appellant's brief relied *solely* on a disciplinary rule violation as the basis for reversing his conviction. We set out the entirety of appellant's point of error that presented this issue to the Court of Appeals.

"The lead prosecutor in the case, Ms. Heather Rattan, testified in the guilt/innocence phase of the trial. The testimony was given in rebuttal to the Appellant's claim that a deal had been made with the co-defendant, wherein the case against the co-defendant would be dismissed if he testified against the Appellant.

"Ms. Rattan testified that the case against the co-defendant had been dismissed, but denied any deal was made. (Citations to record omitted).

"After giving testimony in front of the jury the prosecutor was allowed over objection

---

1. Rule 3.08, State Bar Rules, in relevant part provides:

"A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, ..."

2. However, we note that Section 2.5(c), *Texas Prosecutor Standards and Guidelines,* provides that a prosecutor shall not be disqualified from testifying as a witness "when the need of the testimony arises during a proceeding." Section 2.5(c), *Texas Prosecutor Standards and Guidelines,* as prepared by the Prosecutor Standards and Guidelines Study Commission, a grant-funded project of the Criminal Justice Division of the Office of the Governor, State of Texas, February 1993.

to continue prosecuting the case. The prosecutor read the enhancement paragraph (citation to record omitted), gave the closing argument for the State, in both the guilt and punishment stages. (Citations to record omitted).

"The Court of Criminal Appeals has held that it is highly improper for a prosecutor to serve as a witness, then resume conducting the State's case, then argue to the jury that his version of events was more credible than was Appellant's. *Beasley v. State*, 728 S.W.2d 353, at 357 n. 5 (Tex.Cr. App.1987)"

And, the Court of Appeals relied *solely* on a disciplinary rule violation to reverse the conviction. *Brown*, 883 S.W.2d at 391.

■ However, the applicable rule here is that violation of a disciplinary rule does not require a reversal unless a defendant can show the disciplinary rule violation affected his substantial rights or deprived him of a fair trial. See *Pannell v. State*, 666 S.W.2d 96, 98 (Tex.Cr.App.1984) (ethical violations are to be dealt with by means of the administrative mechanisms specially established for dealing with unethical conduct); see also *Armstrong v. State*, 897 S.W.2d 361, 366 n. 5 (Tex.Cr.App.1995); *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 6 (Tex.Cr.App.1990). The Court of Appeals erred to rely *solely* on a disciplinary rule violation to reverse the conviction. On this record, appellant's remedy is to file a complaint with the State bar. See *Armstrong*, 897 S.W.2d at 366 n. 5. We overrule footnote five of *Beasley*, 728 S.W.2d at 357, to the extent it conflicts with this opinion.

We reverse the judgment of the Second Court of Appeals and remand the cause to that Court for further proceedings consistent with this opinion.

KELLER, Judge, concurring.

The majority disposes of this case by contending that appellant raised only a disciplinary rule violation and that a disciplinary rule violation, alone, does not constitute reversible error. While I agree that the mere violation of a disciplinary rule is not a ground for reversal, I disagree with the majority's conclusion that appellant alleges only a disciplinary rule violation. But because I believe that the due process clause was not violated by the prosecutor's continued participation in this case, I concur in the Court's judgment.

## I. Preservation of Error

The Court of Appeals held that the trial court erred in permitting the prosecutor to continue participating in the case but did not give any legal basis for its holding. This is not surprising in view of the dearth of authority on the issue in this State. And although it is possible that that court did rely upon a disciplinary rule violation, it is not clear to me that they did so. Neither is it evident to me that the appellant's complaint in the Court of Appeals was limited to that basis. An examination of appellant's point of error to the Court of Appeals, set out in the majority opinion, reveals not a single reference to ethical or disciplinary rules. Instead, appellant relies solely upon footnote 5 of *Beasley v. State*, 728 S.W.2d 353 (Tex.Crim. App.1987). Likewise, the Court of Appeals opinion makes no reference to the disciplinary rules but relies solely upon *Beasley*. *Brown v. State*, 883 S.W.2d 389, 391 (Tex. App.—Fort Worth 1994). An examination of *Beasley* reveals that it also makes no reference to disciplinary rules. Footnote 5, upon which appellant relied, provides:

> Because we have held the confession to be inadmissible, we need not admonish the assistant district attorney that it would be highly improper for him to serve again as witness to the confession, then to resume conducting the State's case, then to argue to the jury (in effect to testify) that *his* version of events was more credible than was appellant's.

*Beasley*, 728 S.W.2d at 357 n. 5. *Beasley*'s use of the phrase "highly improper," while perhaps interpretable as alleging an ethical violation, could just as easily be interpreted as a due process argument. I think the latter is the more reasonable interpretation.

Moreover, appellant's objection at trial was essentially a due process argument. In objecting to the prosecutor's continued participation in the case, the defense attorney stated:

It's unfair, inherently unfair, to the defendant for her [the prosecutor] to put her credibility in issue and then to argue to the jury also.

While appellant did not use the words "due process," he did rely upon *Beasley*. Although footnote 5 in *Beasley* is clearly dicta, there is no authority in Texas on this issue, and the footnote appears to be the statement made by this Court that most closely resembles appellant's situation. Appellant relied on the only authority that exists to support his claim, and that authority itself has no explicit legal foundation. Under these circumstances, I believe that this Court should confront the due process implications of the prosecutor's conduct. I turn to other states for guidance in this effort.

## II. Due Process

The concepts of due process and fundamental fairness require a separation between the State's advocates and its witnesses.[1] The prosecutor who tries a case should not testify as a witness in regard to a contested matter absent a showing that his testimony is necessary.[2] Such necessity generally involves a showing that the testimony is important to the State's case or required to rebut the defendant's case and that the need for the testimony could not reasonably have been anticipated. *Timberlake v. State*, 246 Ga. 488, 271 S.E.2d 792, 802 (1980). *Butler v. State*, 229 Ind. 241, 97 N.E.2d 492, 495 (Ind. 1951). *Brown v. Commonwealth*, 512 S.W.2d 509, 510 (Ky.1974). A prosecutor who tries the case must take reasonable precautions to prevent himself from becoming entangled in the trial as a witness. *People v. Guerrero*, 47 Cal.App.3d 441, 120 Cal.Rptr. 732, 736 & 736 n. 8 (2 Dist.1975). If, during the middle of trial, the prosecutor's testimony becomes necessary, and the prosecutor does not withdraw from participation, he should *never* argue his credibility to the jury. *See Waldrop*

*v. State*, 424 So.2d 1345, 1348 (Ala.Crim.App. 1982). *People v. Janes*, 138 Ill.App.3d 558, 93 Ill.Dec. 216, 223–24, 486 N.E.2d 317, 324–325 (2 Dist.1985). *State v. McCuistion*, 88 N.M. 94, 537 P.2d 702, 703 (App.1975).

A prosecutor's failure to follow the above principles seriously jeopardizes a defendant's right to a fair trial. *Waldrop*, 424 So.2d at 1348–1349. *Janes*, 93 Ill.Dec. at 223, 486 N.E.2d at 324. *McCuistion*, 537 P.2d at 703. This conclusion is grounded upon the "recognition of the power and influence [the prosecutor] exerts" in a criminal prosecution. *Waldrop*, 424 So.2d at 1348. Moreover, in addition to the danger that the prosecutor's position may artificially enhance the credibility of his testimony, the prosecutor's participation in closing arguments after the testimony may generate confusion among the jury about whether the prosecutor is speaking as an advocate or as a witness. *See United States v. Birdman*, 602 F.2d 547, 553–554 (3rd Cir.1979).

In the present case, after the trial court refused to admit the dismissal papers into evidence, the lead prosecutor, Heather Rattan, requested a recess to attempt to locate L.D. Shipman, the only other prosecutor who would know whether the State had a deal with the witness, Albert. After the attempt to locate Shipman failed, Rattan took the witness stand and testified that there was no deal with Albert. Rattan later delivered closing arguments for the State. During argument, she argued her own credibility, stating: "Now, the defense attorney says that I say that no deal was made and I'm your public servant and I'm lying to you. If you have a problem with the case against Gordon Albert being dismissed, tell me after this case is over." She later reiterated that there was no deal with Albert.

Although in many circumstances testimony about the dismissal of a prosecution could be of a formal and uncontested nature, in this

---

1. It appears that the trial court has no power to disqualify the prosecutor after he has testified as a witness. Regardless of the trial court's power, though, the failure of a prosecutor to recuse himself may constitute reversible error if it amounts to a due process violation. *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 7 (Tex.Crim. App.1990) (plurality opinion). This is so regardless of whether the prosecutor's conduct violates a specific disciplinary rule.

2. Such a showing is generally not required if the prosecutor's testimony concerns only formal, uncontested matters. *Flowers v. State*, 776 S.W.2d 444, 449 (Mo.App.1989). *Banks v. State*, 810 P.2d 1286, 1292–1293 (Okla.Crim.App.1991).

case it was not. Nevertheless, Rattan's testimony appears to have been necessary because she was unable to locate Shipman. Moreover, the need for the testimony could not have been reasonably anticipated, and when the prosecutor attempted to introduce the evidence by means of a certified copy of the dismissal, the trial court would not allow her to do so. Under these circumstances, I find no due process violation either in the fact that Rattan testified or in the fact that she continued to prosecute the case after testifying.[3]

I concur in the Court's judgment.

MALONEY, Judge, dissenting.

The majority concludes the Court of Appeals erred because it relied solely on the violation of a disciplinary rule to reverse appellant's conviction. While the basis of the Court of Appeals' holding is not altogether clear, even the State does not interpret the Court of Appeals' opinion as relying solely on a disciplinary rule violation. The State asserts in its brief that "[t]he issue to be decided by this Court is whether or not the trial court's failure to remove the prosecutor from the case after she testified as a witness constituted a violation of the Appellant's due process rights."[1] I would interpret the Court of Appeals' opinion in the same manner as the State, as holding that appellant's due process rights were violated by the prosecutor's continuing representation after testifying before the jury.

Courts that have addressed the issue have shown general distaste for the practice of prosecutor serving as witness in the same

proceeding. *E.g., United States v. Trapnell,* 638 F.2d 1016, 1025 (7th Cir.1980) (observing that appearance of prosecutor as witness is improper except in extraordinary circumstances); *United States v. Birdman,* 602 F.2d 547, 552–553 (3rd Cir.1979) (and cases cited therein) (noting courts and especially federal courts universally frown on practice of prosecutor testifying), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980); *United States v. Torres,* 503 F.2d 1120, 1126 (2nd Cir.1974) (prosecutor should not be used as witness unless all other sources of testimony exhausted); *Robinson v. United States,* 32 F.2d 505, 510 (8th Cir. 1928) (opinion on reh'g) (practice of prosecutor acting as witness should be disapproved except in most extraordinary circumstances); *see generally* Erwin S. Barbre, Annotation, *Prosecuting Attorney as a Witness in Criminal Case,* 54 A.L.R.3rd 10 (1974 & Supp. 1995). Only rarely should such testimony be permitted, and if the prosecutor testifies, he should thereafter withdraw from further participation. *E.g., United States v. Johnston,* 690 F.2d 638, 644 (7th Cir.1982). Several reasons have been advanced for this rule:

First, there is the risk that the prosecutor will not be a fully objective witness[.] ... Second, it is feared that the prestige of a Government attorney's office will artificially enhance his credibility.... A third consideration is that the prosecutor's testifying might "create ... confusion on the part of the jury as to whether he [is] speaking in his capacity of prosecutor or witness." Such confusion ... may result in the fact-finder according testimonial

---

**3.** During argument Rattan argued her own credibility to the jury. As noted above, this argument is improper and itself implicates the due process clause. Once Rattan testified to a contested matter, it was perhaps inevitable that defense counsel would question her credibility. Nevertheless, by testifying she placed herself in that position, and she should not have been allowed to argue to the jury that she was the more credible witness. Her conduct was particularly insupportable because she relied on the very thing that makes such arguments improper—her status as a public servant. However, the Court of Appeals did not address the issue of improper argument.

**1.** The State spends the better part of the argument portion of its brief discussing why it be-

lieves appellant's due process rights were not violated. Given that the basis of the Court of Appeals' holding is not entirely clear, the majority fails in its role as reviewing court to address the arguments presented in support of the petition on which it granted review. A different situation would be presented if the Court of Appeals had expressly held that the violation of a disciplinary rule alone constituted grounds for reversal of the conviction. As Judge Keller points out in her concurring opinion, there is no mention of a disciplinary rule violation in appellant's brief to the Court of Appeals, in the Court of Appeals' opinion, or in *Beasley,* the only authority cited by the Court of Appeals.

credit to the prosecutor's closing arguments.... [Finally,] the most frequently cited justification for the rule reflects a broader concern for public confidence in the process of justice.

*Birdman*, 602 F.2d at 553–54.

Whether or not the prosecutor's testifying in this case amounted to a due process violation is not questioned. The only issue presented is whether the prosecutor's failure to withdraw from the case *after* testifying deprived appellant of a fair trial.[2]

The State's cocaine case against appellant turned largely upon Albert's credibility. Appellant claimed he did not possess the cocaine and never handed it to Albert. Albert's testimony that appellant handed the cocaine to him was the only evidence connecting appellant to the cocaine. Albert testified that he had no deal with the State; appellant disputed this, calling Albert's credibility into question. The prosecutor's testimony was given in rebuttal of appellant's suggestion that Albert was lying about a deal with the State. Immediately following her testimony, both sides closed. In closing argument the prosecutor stated

Now the Defense Attorney says that I say that no deal was made and I'm your public servant and I'm lying to you. If you have a problem with the case against Gordan Albert being dismissed, tell me after this case is over.

The prosecutor's actions deprived appellant of a fair trial for precisely the reasons underlying the rule that a prosecutor should not continue to prosecute after testifying. *See Birdman*, supra. In testifying that no deal was made and then arguing that she was telling the truth, the prosecutor combined her credibility as a witness and a prosecutor before the jury, giving testimonial credit to her closing argument.[3] She further improperly invoked the prestige of her position as a prosecutor to bolster her credibility as a witness by suggesting that a public servant does not lie. The Court of Appeals did not err in concluding appellant's due process rights were violated by the prosecutor's continued prosecution after testifying.[4] While the Court of Appeals' harm analysis under Tex.R.App.P. 81(b)(2) was less than adequate, the State does not raise a complaint as

2. The State's ground for review asks that we decide whether:

The Court of Appeals erred in holding that the trial court erred in allowing the prosecutor to continue prosecuting the case after testifying as a witness before the jury since the trial court is without legal authority to remove a prosecutor from the case if the appellant's due process rights are not violated.

3. Concurring in the Court's judgment, Judge Keller concludes there was no due process violation in the fact that the prosecutor "continued to prosecute the case after testifying." *Concurring opinion* at 4. While she suggests that the prosecutor's jury argument might amount to a due process violation, since "the Court of Appeals did not address the issue of improper argument[,]" she apparently declines to consider it in her holding. *Id.* at 4 n. 3. However, as reflected in its brief before this Court, the State views the prosecutor's argument *as the basis* for the Court of Appeals' holding:

Although the Court of Appeals never specifically states that they believed that it was the prosecutor's argument which constituted a deprivation of Appellant's due process rights or never even analyzes the error in terms of a due process violation the Court's reference to the following statement made by the prosecutor during jury argument, i.e., "now the Defense

Attorney says that I say that no deal was made and I'm your public servant and I'm lying to you" seems to be the basis for the Court's finding that Appellant was deprived of a fair trial.

In addition, given that the only thing remaining in the prosecution of the case after the prosecutor testified was closing argument, Judge Keller's conclusion that there was no due process violation in the prosecutor's continued prosecution has no basis without consideration of closing argument.

4. The majority points to what appears to be a manual setting forth guidelines for state prosecutors, suggesting that the prosecutor's actions were acceptable because she complied with the manual. The quoted portion of the manual provides that a prosecutor can testify as a witness whenever "the need ... arises." A broader "guideline" cannot be imagined. The majority's apparent sanctioning of this rule is alarming. The rule makes no reference to due process concerns nor does it reflect a policy, consistent with virtually every court that has addressed the issue, that would reserve prosecutorial testimony for exceptional cases when no acceptable alternatives are available. Whether or not a prosecutor's actions comport with guidelines contained in a prosecutors' manual is of no moment.

to that aspect of the Court's opinion. I dissent.

CLINTON, BAIRD and OVERSTREET, JJ., join.